IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-674-FL(2)

| | |
|---|---|
| CYNTHIA F. RHODES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Cynthia F. Rhodes ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI") benefits. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE #16] be granted, Defendant's Motion for Judgment

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security as a defendant to this action. Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

on the Pleadings [DE #18] be denied, and the Commissioner's decision be remanded for further proceedings.

## STATEMENT OF THE CASE

Plaintiff protectively applied for a period of disability, SSI, and DIB on June 11, 2014, with an alleged onset date of March 26, 2012 (R. 12, 264, 271), which Plaintiff subsequently amended to May 24, 2014 (R. 12, 38–39). The applications were denied initially and upon reconsideration, and a request for hearing was filed. (R. 12, 90, 109, 128, 149, 215–16.) On April 11, 2016, a hearing was held before Administrative Law Judge ("ALJ") Gary Brockington, who issued an unfavorable ruling on April 28, 2016. (R. 12, 27.) The Appeals Council denied Plaintiff's request for review on May 20, 2016. (R. 1.) Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

I.   Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in

original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since May 24, 2014, the amended onset date. (R. 14.) Next, the ALJ determined Plaintiff had the following severe impairments: "mitochondrial encephalopathy, lactic acidosis, stroke-like episodes (MELAS) syndrome, headaches, seizure disorder, late effects of cerebrovascular accident, cognitive disorder, obesity, bilateral hearing loss, diabetes mellitus, asthma, and vertigo." (*Id.*) The ALJ found several non-severe impairments based on previous medical conditions, including hyperlipidemia, hyperkalemia, GERD, bursitis, urinary tract infection, and mild chronic kidney disease, stage II. (R. 15.) The ALJ noted that these impairments did not have lasting consequences and thus labeled them as non-severe. (*Id.*)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15–18.) The ALJ analyzed Listings 2.10, 3.03, 9.00, 11.02, 11.03, and 11.04. (*Id.*)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a) and SSR 83–10, with the following limitations: occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; never balance; no exposure to loud or very loud noise; no exposure to vibration; no exposure to pulmonary irritants such as dust, odors, fumes, and gases and to poorly ventilated areas; and no

4

exposure to unprotected heights, hazardous machinery or hazardous moving mechanical parts. Claimant's work is limited to simple, routine and repetitive tasks, but not at a production rate pace and simple work related decisions.

(R. 18.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 24.) At step four, the ALJ concluded Plaintiff had past relevant work as an accounting clerk and as a purchase associate. (R. 26.) At step five, the ALJ concluded, based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.*) Specifically, the ALJ found Plaintiff capable of performing the following jobs: addresser, call out operator, and telephone information clerk. (R. 27.)

## IV. RFC Assessment

Plaintiff contends the ALJ improperly evaluated medical evidence in the context of formulating the RFC. The undersigned agrees and determines that this error is not harmless.

### A. RFC Framework

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 416.945(a)(4). It is based upon

5

all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. § 416.945(a)(3). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p, 1996 WL 374184, at *7.

In practice, formulating the RFC requires that an ALJ conduct a "function-by-function analysis" of a claimant's work abilities before expressing any conclusions about limits on the RFC. *Mascio v. Colvin*, 780 F.3d 632, 635–36 (4th Cir. 2015); SSR 96–8p, 1996 WL 374184, at *3. This function-by-function analysis requires an ALJ to discuss a Plaintiff's ability to perform work-related actions listed in 20 C.F.R. § 416.945(b)–(d). *Mascio*, 780 F.3d at 636 n.5.

Crucially, the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). In other words, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). If necessary, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7.

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from

medical sources about issues reserved to the Commissioner." SSR 96–5p, 1996 WL 374183, at *3 (July 2, 1996). As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R §§ 404.1527(b)–(c), 416.927(b)–(c); SSR 96–8p, 1996 WL 374184, at *7. Medical opinions are "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

When the RFC is limited to less than a full range of sedentary work, the assessment "must include a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in file was considered in the assessment. The individual's maximum remaining capacities to perform sustained work on a regular and continuing basis (what he or she can still do 8 hours a day, for 5 days a week, or an equivalent work schedule) must be stated." SSR 96–9p, 1996 WL 374185, at *5 (July 2, 1996).

In sum, an ALJ is required to explain his analysis and evaluation when assessing a claimant's RFC because a reviewing court "cannot fill in the blanks for the ALJ." *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017) (reversing and remanding a disability benefits denial because the ALJ failed to document properly application of mental impairment special technique in RFC assessment).

7

B.  Akpaka Evaluation

On November 25, 2014, Plaintiff underwent a mental status examination by state psychological consultative examiner Dr. Ernest Akpaka. (R. 603–05.) In the report explaining his findings, Dr. Akpaka noted that Plaintiff's "immediate memory and delayed memory are significantly impaired," but that her "extremely low" scores on the visual working memory test "may underestimate" her abilities in that area due to vision impairment. (R. 605.) Dr. Akpaka concluded, in relevant part, that "[f]ailure to remember verbal instructions may frustrate [Plaintiff] and may limit her ability to perform tasks that require sustained concentration and persistence as well as impede her ability to tolerate the stress associated with day-to-day regular work activity." (*Id.*)

The ALJ summarized the Akpaka report (R. 22) and subsequently stated that Dr. Akpaka's "opinion related to [the] psychological consultative exam" was given "moderate weight" (R. 24). Immediately following this assignment of weight, the ALJ (1) mentioned only Dr. Akpaka's opinions regarding Plaintiff's ability to pay attention, follow instructions, and relate to other people; and (2) stated that Dr. Akpaka's opinion was "consistent with the record as a whole and was a thorough, although one-time, exam." (R. 25.)

The ALJ did not discuss the portion of Dr. Akpaka's examination report that, as noted above, described Plaintiff's memory impairments and opined as to her potential difficulty with full-time work. This portion of Dr. Akpaka's examination report is inconsistent with the ALJ's RFC assessment and ultimate determination

8

regarding disability. The ALJ was, therefore, required to explain how he resolved this material inconsistency. *See* SSR 96–8p, 1996 WL 374184, at *7. Here, the ALJ did not sufficiently explain the weight he gave to "obviously probative exhibits," namely, Dr. Akpaka's entire report. *See Sterling Smokeless Coal Co.*, 131 F.3d at 439–40. The ALJ thus "failed to show his work," thereby rendering the decision unreviewable. *See Patterson*, 846 F.3d at 663.

The Commissioner argues that the ALJ "at least implicitly gave" these portions of Dr. Akpaka's opinion moderate weight, and regardless, there was "ample evidence" that justified not imposing a more restrictive RFC based on Dr. Akpaka's findings. (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #19] at 6.) This argument fails for two reasons.[2] First, that is a post-hoc rationalization for the ALJ's failure to follow relevant law, regulations, and administrative guidance; neither this court *nor the Commissioner* can "fill-in the gaps for the ALJ." *Torres v. Colvin*, No. 1:15-CV-7-RLV, 2016 WL 54933, at *9 (W.D.N.C. Jan. 5, 2016). Second, the error to which Plaintiff points is analogous to one recently addressed by the Fourth Circuit in *Ezzell v. Berryhill*, No. 16-1430, --- F. App'x ----, 2017 WL 1826881 (May 4, 2017) (per curiam) (unpublished).

---

[2] The ALJ's decision belies the Commissioner's argument. For example, the ALJ noted that Plaintiff "has some cognitive difficulties due to a history of stroke[s] and MELAS[;] [h]owever, most of [Plaintiff's] mental status exams have been overall unremarkable." (R. 17.) Plaintiff has a college degree in accounting (R. 23, 43), worked two jobs as an accounts payable clerk and retail cashier for over ten years (R. 23, 43–46), and, as documented in the Akpaka report, could neither add five and four nor subtract six from ten as of November 2014 (R. 604). While it may be true that *most* of the mental status exams have been unremarkable, the lack of discussion of some of the most remarkable aspects of the Akpaka report intimates that the ALJ chose not to resolve the material inconsistencies in the evidence and, instead, simply omitted any discussion of evidence inconsistent with his ultimate conclusion.

9

In *Ezzell*, the Fourth Circuit reviewed a decision of the Commissioner where the ALJ gave "significant weight" to a consultative medical examiner's opinion that included "probative evidence" the plaintiff could not ambulate effectively but the ALJ failed to conduct a relevant listing analysis and assessed an RFC inconsistent with the medical examiner's opinion. *Id.* at *1–2. The Fourth Circuit highlighted that "[w]ithout any discussion, . . . the ALJ concluded – implicitly rejecting [the doctor]'s opinion – that Ezzell failed to show that his impairment resulted in the inability to ambulate effectively on a sustained basis." *Id.* at *2. The Fourth Circuit held that "the ALJ's decision [did] not include a sufficient discussion of the evidence." *Id.* The Commissioner urges the court to indulge a similar implication here; the undersigned declines that invitation.

In sum, the ALJ here did not sufficiently explain the weight he assigned to probative medical evidence that conflicted with his RFC determination. Such failure precludes meaningful judicial review and therefore requires remand to the Commissioner for further proceedings.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #16] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #18] be DENIED, and the Commissioner's decision be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have

until **May 24, 2017**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 10th day of May 2017.

_____
KIMBERLY A. SWANK
United States Magistrate Judge